## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **JAMES HARLAN LYNN,** | ) | |
| **ID # 46080-177,** | ) | |
| **Movant,** | ) | **No. 3:15-CV-1819-N** |
| **vs.** | ) | **No. 3:13-CR-100-N** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| **Respondent.** | ) | **Referred to U.S. Magistrate Judge** |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to *Special Order 3-251*, this habeas case has been automatically referred for findings, conclusions, and recommendation. Based on the relevant findings and applicable law, the *Motion Under 28 U.S.C. § 2255, to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody*, received May 26, 2015 (doc. 2), should be **DENIED** with prejudice.

### I.  BACKGROUND

James Harlan Lynn (Movant) challenges his federal conviction and sentence in Cause No. 3:13-CR-100-N.  The respondent is the United States of America (Government).

On March 19, 2013, Movant was charged by indictment with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count One) and possession of an unregistered firearm in violation of 26 U.S.C. §§ 5845(a)(1) and (2), 5861(d), and 5871 (Count Two).  (*See* doc. 1.)[1]

### A.    Plea and Sentencing

Movant pled guilty to Count Two pursuant to a plea agreement on June 25, 2013.  (*See* docs. 15, 18, 42.)  It stated that he understood and waived his rights to plead not guilty, to have a trial by jury, to have his guilt proven beyond a reasonable doubt, to confront and cross-examine witnesses,

---

[1]  Unless otherwise indicated, all document numbers refer to the docket number assigned in the underlying criminal action, 3:13-CR-100-N.

and to call witnesses. (*See* doc. 15 at 1.) He understood the nature and elements of the crime and agreed that the factual resume was true. (*See id*.) He understood that the sentence would be imposed by the Court after consideration of the sentencing guidelines, the guidelines were advisory and not binding, no one could predict with certainty the outcome of the Court's consideration of the guidelines, and he would not be allowed to withdraw his plea if the sentence was higher than expected. (*See id*. at 2.) He agreed to provide complete and truthful information and testimony about his participation in the offense. (*See id*. at 3.) He waived the right to appeal or collaterally challenge the conviction and sentence, subject to the exceptions listed in the agreement. (*See id*. at 4.) His guilty plea was freely and voluntarily made and not the result of force, threats, or promises apart from those set out in the plea agreement, and there were no guarantees or promises from anyone as to what sentence would be imposed. (*See id*. at 4.) The sentence for Count Two could be imprisonment for up to 10 years. (*See id*. at 2.) The government agreed to dismiss Count One and not to bring any additional charges against him based on the underlying conduct. (*See id*. at 3.)

In a factual resume, Movant admitted that on or about March 25, 2011, he knowingly possessed a weapon made from a shotgun, known as a sawed-off shotgun, bearing serial number 50677X. (*See* doc. 14 at 2.) He was arrested on or about March 25, 2011, in the area of 1033 E. Trinity Mills Road, and in possession of the sawed-off shotgun. (*See id*.) After he was arrested, he knowingly and voluntarily waived his *Miranda* rights and told police and federal agents that he possessed the sawed-off shotgun during his arrest on March 25, 2011. (*See id*. at 2-3.) An agent examined the sawed-off shotgun seized from him and determined that it was the shotgun described in the indictment, and that it fired and functioned as designed. (*See id*. at 3.) Movant acknowledged that the weapon was not registered to him. (*See id*.)

2

On June 25, 2013, Movant and counsel appeared for his guilty plea, and he testified under oath. (*See* doc. 42.) He understood his rights and knew that a guilty plea waived his rights. (*See id*. at 4-8.) He discussed with counsel the charges, sentencing, and the application of the sentencing guidelines. (*See id*. at 9.) He understood the judge's authority to determine the sentence and the role of the advisory guidelines. (*See id*. at 9-11.) He understood the written plea agreement, including the waiver of the right to appeal or challenge the sentence, and he entered the agreement of his own free will. (*See id*. at 17-18.) Other than the written plea agreement, no one made any promise to induce him to plead guilty and no one attempted to force him to plead guilty. (*See id*. at 18-19.) He understood and admitted that he committed the essential elements of the offense. (*See id*. at 15-16.) He understood the potential punishment, including imprisonment for not more than 10 years. (*See id*. at 20.) He admitted that the facts listed in the factual resume were true. (*See id*. at 23.) He pled guilty to Count Two. (*See id*. at 22.) The Court accepted his guilty plea based on a finding that it was knowing and voluntary and supported by an independent basis in fact containing each of the essential elements of the offenses charged in Count Two. (*See* doc. 22.)

On September 23, 2013, the United States Probation Office (USPO) filed a Presentence Report (PSR). (Doc. 24-1.) The PSR stated that officers located a stolen Ford Sport Trac vehicle in a Whataburger parking lot and conducted surveillance on it. On March 25, 2011, officers observed Movant and Ramiro Sustaita Ramirez drive up in a Chrysler Crossfire and park next to the Sport Trac. Ramirez entered the Sport Trac, started it, and began to back out. The officers arrested Movant and Ramirez. The sawed-off shotgun was found in Movant's vehicle. He admitted knowledge of the shotgun and said he was delivering the shotgun to a "chop shop" with the stolen vehicle. The shotgun was reported stolen from a residence on March 17, 2011. On March 25, 2011,

3

officers executed a search warrant at his residence, which was owned by the family of Movant's girlfriend, Megan Loveday. Two firearms were found, both of which had been reported as stolen, and Movant claimed possession of those two firearms. Loveday was arrested on March 24, 2011, and officers found a firearm behind the passenger seat of the vehicle she was driving. Movant admitted he bought that firearm and placed it in the car she was driving. He said that Loveday took responsibility for that firearm and the firearms found in the residence in an attempt to protect him. (*See id*. at 4-5 ¶¶ 11, 12, 15.)

The PSR applied the 2012 United States Sentencing Guidelines Manual (USSG). (*See id*. at 7, ¶ 26.) The base offense level was 26. (*See id*., ¶ 27.) Two offense levels were added because Movant possessed between three and seven firearms. (*See id*., ¶ 28.) Two levels were added because the sawed-off shotgun was a destructive device. (*See id*., ¶ 29.) Two levels were added because the firearms were stolen. (*See id*., ¶ 30.) Three levels were reduced for acceptance of responsibility, resulting in a total offense level of 30. (*See id*., ¶¶ 38-40.) His criminal history category was six. (*See id*. at 17, ¶ 67.) The resulting guideline range was 168 to 210 months of imprisonment, but the statutory maximum was 10 years. (*See id*. at 22, ¶ 101.)

Prior to sentencing, the Federal Public Defender (FPD) was substituted in for Movant's prior counsel, and Assistant FPD (AFPD). (*See* doc. 28.) At the sentencing hearing on January 27, 2014, counsel argued that Movant's sentence should be reduced for the time he was in state custody on related charges. (*See* doc. 44 at 4-5.) The Court adopted the factual content of the PSR. (*See* doc. 44 at 7.) It took into account the 2-year sentence for theft of the vehicle and assessed a sentence of 96 months' imprisonment. (*See* docs. 34 at 2, 35 at 3, 44 at 13.) Movant's appeal was dismissed on his motion. (*See* doc. 45; *United States v. Lynn*, No. 14-10167 (5th Cir. June 5, 2014)).

B.    **Substantive Claims**

Movant raises the following grounds:

(1)  His right to due process was violated because counsel was ineffective for:

      (a)  lack of competence;

      (b)  a breach of a fiduciary duty;

      (c)  having a conflict of interest;

(2)  His plea was involuntary because counsel was ineffective;

(3)  The search of his car and home were illegal;

(4)  The PSR erroned regarding his possession of the firearm found in Loveday's car.

(3:15-CV-1819-N, doc. 2 at 7-17; doc. 3 at 5-21.)  The Government filed a response to the § 2255 motion on July 14, 2015.  (*Id.*, doc. 11.)

## II.  SCOPE OF RELIEF AVAILABLE UNDER § 2255

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice."  *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (citations and internal quotation marks omitted).  It is well-established that "a collateral challenge may not do service for an appeal."  *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (*en banc*) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)).

A failure to raise a claim on direct appeal may procedurally bar an individual from raising the claim on collateral review.  *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001).  Defendants may only collaterally attack their convictions on grounds of error omitted from their direct appeals upon showing "cause" for the omission and "actual prejudice" resulting from the

error. *Shaid*, 937 F.2d at 232. However, "there is no procedural default for failure to raise an ineffective-assistance claim on direct appeal" because "requiring a criminal defendant to bring [such] claims on direct appeal does not promote the[] objectives" of the procedural default doctrine, "to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro v. United States*, 538 U.S. 500, 503-04 (2003). The Government may also waive the procedural bar defense. *Willis*, 273 F.3d at 597.

### III.  INEFFECTIVE ASSISTANCE OF COUNSEL

Movant contends that counsel was ineffective for lack of competence, for breaching a fiduciary duty, and for having a conflict of interest, and that the lack of effective assistance of counsel violated his right to due process.

The Sixth Amendment to the United States Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. art. VI. The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, the prisoner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his or her defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *See* 466 U.S. at 696. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance."

6

*Strickland*, 466 U.S. at 689.  "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions."  *Id.* at 691. To establish prejudice, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694; *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (inquiry focuses on whether counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors.  *Strickland*, 466 U.S. at 695-96.

To show prejudice in the sentencing context, the movant must demonstrate that the alleged deficiency of counsel created a reasonable probability that his sentence would have been less harsh. *See Glover v. United States*, 531 U.S. 198, 200 (2001) (holding "that if an increased prison term did flow from an error [of counsel] the petitioner has established *Strickland* prejudice").  One cannot satisfy the second prong of *Strickland* with mere speculation and conjecture.  *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992).  Conclusory allegations are insufficient to obtain relief under § 2255.  *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989); *United States v. Daniels*, 12 F. Supp. 2d 568, 575-76 (N.D. Tex. 1998); *see also Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (holding that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding").

A.    **Competence**

Movant contends that counsel was ineffective for lack of competence.  He asserts that

7

counsel misstated that he was arrested in the Ford Sport Trac, that there were questions about whether the shotgun was found in his car or in his home, that the search warrant for his home was not signed and dated, that Loveday pled guilty to possessing the firearm found in her car, and that there was a question about how he could have known that the Ford Sport Trac was stolen.

### 1.    *Misstatement*

Counsel stated at the sentencing hearing that Movant was arrested in the Ford Sport Trac. (*See* doc. 44 at 4.)  The Court adopted the factual content of the PSR.  (*See id*. at 7.)  The PSR stated that Movant was in the Chrysler Crossfire, and that Ramirez entered the Ford Sport Trac.  (*See* doc. 24-1 at 4, ¶ 11.)  Movant has not shown that he was prejudiced by counsel's misstatement because he has not shown how it affected his sentencing.

### 2.    *Location of the Shotgun*

Movant contends that a police property report, a vehicle impound report, and a chain of custody report showed that the shotgun was found in his home, and that there was no evidence to substantiate the allegation by officers that the shotgun was found in his vehicle when he was arrested.

There is no requirement that evidence substantiate the statements of officers that the shotgun was found in his vehicle.  Moreover, Movant admitted in the factual resume that he knowingly possessed the sawed-off shotgun during his arrest. (*See* doc. 14 at 2-3.) He admitted under oath that the facts stated in the stipulated facts portion of the factual resume were true and correct. (*See* doc. 42 at 23.) The reports on which he relies do not show that the shotgun was found in his home. The shotgun is not listed in the vehicle impound report, (*see* doc. 3 at 25), which only suggests that it was not in the car during an inventory after the car was impounded post-arrest. He has not shown that

the shotgun was not seized upon his arrest, before the car was impounded. A property report lists property, including the shotgun, but it does not clearly show that the shotgun was found at his home. (*See* doc. 3 at 23.) The return of the search warrant shows that two firearms were found in the home, but neither was the sawed-off shotgun. (*See* doc. 21 at 3.)

Movant has not presented independent and reliable evidence to overcome the "strong presumption of verity" accorded "solemn declarations" made in open court. *See Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *United States v. Palmer*, 456 F.3d 484, 491 (5th Cir. 2006). He has not overcome the presumption of regularity and "great weight" accorded court records. *See United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (plea document "is accorded great evidentiary weight"); *Bonvillian v. Blackburn*, 780 F.2d 1248, 1252 (5th Cir. 1986) (holding that court records are "accorded great weight"); *Webster v. Estelle*, 505 F.2d 926, 929-30 (5th Cir. 1974) (holding that court records "are entitled to a presumption of regularity"). He has not overcome the presumption that counsel reasonably decided not to challenge whether the shotgun was in Movant's vehicle.

**3.    *Search Warrant***

Movant contends that the search warrant for his home was not signed or dated. (*See* doc. 21 at 2.) He does not aver that the original warrant was not signed or dated. He does not aver that the document he submitted is not merely an unsigned copy of the original warrant, but that it is a copy of the original warrant which was unsigned.

Nevertheless, even if the search warrant was unsigned, he has not established prejudice. Two firearms seized from the home were used to elevate the offense level by two levels for possessing three to seven firearms. (*See* doc. 24-1 at 7, ¶ 28.) If the total offense level were reduced by two levels to 28, the guideline sentencing range with a criminal history category of 6 would have been

140-175 months.  U.S.S.G. Sentencing Table.  Because of the 10-year statutory maximum sentence, his guideline term would still have been 120 months.  He received a 96-month sentence after accounting for his two-year state sentence.  He has not shown that there is a reasonable probability that his sentence would have been less harsh had counsel sought to suppress the firearms obtained from the search of the house.  *See Glover v. United States*, 531 U.S. at 200.

      **4.**     ***Firearm in Loveday's car***

Movant contends that he admitted to possessing the firearm found in Loveday's car because he was told that if he so admitted, Loveday would not be charged.  He asserts that she pled guilty to that offense.  He appears to assert that he was coerced into admitting that he possessed that firearm.

Movant does not allege that he told counsel that his admission was coerced.  He has not shown that he provided counsel with information with which to challenge the use of his admission.  Counsel's duty to investigate is not without limit, and the scope of that duty may be limited by the defendant's lack of cooperation.  *See Bell v. Watkins*, 692 F.2d 999, 1009 & n. 11 (5th Cir.1982); *Gray v. Lucas*, 677 F.2d 1086, 1094 (5th Cir. 1982).  "In general, counsel is not ineffective for failing to discover evidence about which the defendant knows but withholds from counsel." *Lackey v. Johnson*, 116 F.3d 149, 152 (5th Cir. 1997).  He has not shown deficient performance.

He has also not shown prejudice.  The possession of the firearm found in Loveday's car was used to raise his offense level two levels for possessing three to seven firearms.  (*See* doc. 24-1 at 7, ¶ 28.)  Even without that firearm, the two-level increase would have remained, since he possessed three firearms – the sawed-off shotgun and the two firearms found in the house.  As discussed, he has not shown that there is a reasonable probability that his 96-month sentence would have been less

harsh with the elimination of that two-level increase.

### 5. *Knowledge that the Ford Sport Trac Was Stolen*

Movant contends there was a question about how he would have known that the Ford Sport Trac was stolen. According to the PSR, he told officers that he was taking the sawed-off shotgun to a "chop shop" with the stolen vehicle. (*See* doc. 24-1 at 5, ¶ 11.) He has not shown that counsel's failure to challenge whether he knew the vehicle was stolen was unreasonable. He has not shown that there is a reasonable probability that his sentence would have been less harsh had counsel made such a challenge.

## B.   Breach of Fiduciary Duty

Movant claims counsel deceived him into believing that they were his attorneys. He does not allege facts that show they were not his attorneys. The FPD's office was appointed to represent him, and both attorneys were from that office. (*See* docs. 8, 28.) He has not shown that counsel breached a fiduciary duty. To the extent that this claim is based on his claims of deficient performance or lack of competence, as discussed, he has not shown that he received ineffective assistance of counsel.

## C.   Conflict of Interest

Movant contends counsel had a conflict of interest because they were paid by a third party.

To prove ineffective assistance of counsel based on a conflict of interest, a movant must show that there was an actual conflict of interest that adversely affected his counsel's performance. *United States v. Scruggs*, 691 F.3d 660, 670 (5th Cir. 2012). A conflict of interest does not always arise when a third party pays for counsel to represent a criminal defendant. *United States v. Olmos*, 532 F. App'x 462, 465 (5th Cir. 2013). A bare allegation of a potential conflict of interest because

11

a federal public defender is paid by the Government is insufficient to demonstrate that counsel was ineffective. *United States v. Pasillas-Martinez*, No. EP-05-CA-0152, 2005 WL 1397012 at *6 (W.D. Tex. June 2, 2005); *see also United States v. Odiodio*, No. 3:03CV0896, 2005 WL 2990906 at *9 (N.D. Tex. Nov. 7, 2005) (no conflict of interest in a criminal case where the appointed attorney was paid by the Government). Movant has not shown there was an actual conflict of interest that adversely affected counsel's performance.

### D.    Due Process

Movant contends that the failure to appoint effective counsel violated his right to due process. This claim is dependent on his claim that counsel was ineffective. As discussed, he has not shown he received ineffective assistance of counsel.

### IV.  VOLUNTARINESS OF PLEA

Movant contends that his plea was involuntary because counsel was ineffective. He also asserts his plea was involuntary because the Court did not comply with Rule 11 of the Federal Rules of Criminal Procedure and address him personally to determine if his plea was voluntary.

A plea of guilty waives a number of constitutional rights. *United States v. Ruiz*, 536 U.S. 622, 628 (2002); *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969). Consequently, "the Constitution insists, among other things, that the defendant enter a guilty plea that is 'voluntary' and that the defendant must make related waivers 'knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences." *Ruiz*, 536 U.S. at 629 (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)); *accord Bousley v. United States*, 523 U.S. 614, 618 (1998) (a plea "is constitutionally valid only to the extent it is 'voluntary' and 'intelligent'") (quoting *Brady*, 397 U.S. at 748). A plea induced by threats, improper promises, deception, or

misrepresentation is not voluntary.  *See United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997).

A plea qualifies as intelligent when the criminal defendant enters it after receiving "real notice of

the true nature of the charge against him, the first and most universally recognized requirement of

due process." *Bousley*, 523 U.S. at 618 (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)).  In

determining whether a plea is intelligent, "the critical issue is whether the defendant understood the

nature and substance of the charges against him, and not necessarily whether he understood their

technical legal effect."  *Taylor v. Whitley*, 933 F.2d 325, 329 (5th Cir. 1991).

"*Boykin* requires that defendants have a hearing prior to entry of the plea, at which there

needs to be an affirmative showing that the decision to plead guilty was voluntarily and intelligently

made." *Matthew v. Johnson*, 201 F.3d 353, 368 n.22 (5th Cir. 2000).  Rule 11 of the Federal Rules

of Criminal Procedure provides procedural safeguards for assuring that guilty pleas are entered

voluntarily and knowingly.  It requires "a judge to address a defendant about to enter a plea of

guilty, to ensure that he understands the law of his crime in relation to the facts of his case, as well

as his rights as a criminal defendant."  *United States v. Vonn*, 535 U.S. 55, 62 (2002).  "The very

premise of the required Rule 11 colloquy is that, even if counsel is present, the defendant may not

adequately understand the rights set forth in the Rule unless the judge explains them."  *Id.* at 78

(Stevens, J., concurring).  A determination of whether a defendant understands the consequences

of his guilty plea does not require a trial court to determine that the defendant has a perfect

understanding of the consequences, however.  The Court must only ascertain whether the defendant

has a realistic or reasonable understanding of his plea.  *See United States v. Gracia*, 983 F.2d 625,

627-28 (5th Cir. 1993) (recognizing that one of the core concerns behind Rule 11 is "a realistic

understanding of the consequences of a guilty plea").  Compliance with the admonishments required

under Fed. R. Crim. P. 11 provides "prophylactic protection for the constitutional rights involved in the entry of a guilty plea." *Id.* at 627.

"The voluntariness of a plea is determined by 'considering all of the relevant circumstances surrounding it.'" *Fischer v. Wainwright*, 584 F.2d 691, 693 (5th Cir. 1978) (quoting *Brady*, 397 U.S. at 749). Courts considering challenges to guilty plea proceedings "have focused on three core concerns: absence of coercion, the defendant's understanding of the charges, and a realistic understanding of the consequences of a guilty plea." *Gracia*, 983 F.2d at 627-28. A realistic understanding of the consequences of a guilty plea means that the defendant knows the "the immediate and automatic consequences of that plea such as the maximum sentence length or fine." *Duke v. Cockrell*, 292 F.3d 414, 416 (5th Cir. 2002). "If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review." *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980) (*en banc*), *modified on other grounds*, 646 F.2d 902 (5th Cir. 1981).

As discussed, Movant has not shown he received ineffective assistance of counsel, and he has not shown that his plea was involuntary on that basis. With regard to the Rule 11 colloquy, the Court questioned Movant regarding the voluntariness of his plea, including his rights and waiver of those rights by a guilty plea, the elements of the offense, range of punishment, waiver of the right to appeal, promises or force to induce him to plead guilty, and the stipulation of facts. (*See* doc. 42.) The Court accepted his guilty plea based on a finding that it was knowing and voluntary and supported by an independent basis in fact containing each of the essential elements of the offenses charged in Count Two. (*See* doc. 22.) He has not shown that his plea was involuntary.

## V. WAIVER

Movant contends that the searches and seizures were illegal and that the PSR was erroneous regarding the enhancements for the firearm in Loveday's car and for possessing the sawed-off shotgun in connection with the theft of a vehicle.

Movant voluntarily pled guilty and waived his right to appeal or file a collateral challenge to his conviction or sentence, except that he reserved his right to bring a direct appeal of a sentence exceeding the statutory maximum punishment or an arithmetic error at sentencing or a collateral proceeding challenging the voluntariness of his plea and waiver, and claims of ineffective assistance of counsel. (*See* doc. 15 at 4, doc. 42 at 17-18.) Generally, "an informed and voluntary waiver of post-conviction relief is effective to bar such relief." *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994) (per curiam), *accord United States v. White*, 307 F.3d 336, 343 (5th Cir. 2002). "A defendant's waiver of [his] right to appeal is not informed if the defendant does not know the possible consequences of [the] decision." *United States v. Baty*, 980 F.2d 977, 979 (5th Cir. 1992). A defendant's waiver of the right to appeal requires special attention from the district court, and it is the court's responsibility to ensure that a defendant fully understands his right to appeal and the consequences of waiving that right. *Id*. As discussed, Movant's plea of guilty was knowing and voluntary, and the appellate waiver is enforceable to bar his claims regarding the searches and seizures and the PSR.

## VI. EVIDENTIARY HEARING

No evidentiary hearing is required when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. Here, the record conclusively shows that Movant is entitled to no relief, so no hearing is required.

## VII.  RECOMMENDATION

The *Motion to Vacate, Set Aside, or Correct Sentence* pursuant to 28 U.S.C. § 2255 should

be **DENIED** with prejudice.

**SO RECOMMENDED** this 3rd day of April, 2017.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

16